UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal Action No.: 4:18-cr-00521-RBH-1 |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Jeremy Lamar Hayes, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant Jeremy Lamar Hayes's "Motion to Dismiss Counts 3, 5, 7, and 9," "Motion for Jackson v. Denno Hearing," and "Motion to Suppress General Warrant." *See* ECF Nos. 48, 54, & 56. The Court held a hearing on November 15, 2018, and took the motions under advisement.

## Background

Defendant is charged in a ten-count indictment with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count One), Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Counts Two, Four, Six, and Eight), using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts Three, Five, Seven, and Nine), and possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (Count 10).[1] *See* ECF No. 2 (indictment). These charges stem from alleged robberies of several businesses in Horry County, South Carolina during January 2018.[2]

On July 31, 2018, Defendant filed a "Motion to Dismiss Counts 3, 5, 7, and 9." *See* ECF No.

---

[1] Kennedy Mariah Boggs is a codefendant charged with the offenses alleged in Counts One through Nine.

[2] Specifically, Counts Two and Three involve an alleged robbery of Peggy's Antique Store; Counts Four and Five involve an alleged robbery of Domino's Pizza; Counts Six and Seven involve an alleged robbery of Royal Cleaners; and Counts Eight and Nine involve an alleged robbery of Pizza Hut.

48. On August 18, 2018, Defendant filed a "Motion for Jackson v. Denno Hearing." *See* ECF No. 54. On August 20, 2018, Defendant filed a "Motion to Suppress General Warrant." *See* ECF No. 56. The Government filed responses in opposition to the motions. *See* ECF Nos. 58–60. The Court held an evidentiary hearing on November 15, 2018, heard testimony from four law enforcement officers,[3] took the motions under advisement, and permitted the parties to submit supplemental briefing on the issues raised at the hearing.[4] Thereafter, Defendant filed a response in support of his *Denno* motion, *see* ECF No. 72, and the Government filed a response in support of its prior responses. *See* ECF No. 75.

## Discussion

The Court will address Defendant's three motions in turn.

I. **Motion for Jackson v. Denno Hearing (Statements to Law Enforcement)**

Pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), Defendant asks the Court to determine the whether his post-arrest statements to law enforcement were knowing, intelligent, and voluntary. *See* ECF No. 54.

A. **Applicable Law**

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself . . . without due process of law." U.S. Const. amend V. A defendant's statement is "involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (en banc) (citing *Oregon v. Elstad*, 470 U.S. 298, 304 (1985)). A court must assess a voluntariness issue by examining

---

[3] These officers were Lieutenant Tony Allen of the Myrtle Beach Police Department ("MBPD"), Corporal Wilson James of the Surfside Beach Police Department, Detective Cory Dulina of the Horry County Police Department, and Officer Whitney Fee of the MBPD.

[4] At the hearing, the parties indicated they were relying on their briefs regarding the Motion to Dismiss Counts 3, 5, 7, and 9.

the "totality of the circumstances," including the "characteristics of the defendant, the setting of the interview, and the details of the interrogation." *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987) (citing *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir.1980)). Under the totality of the circumstances, a statement is involuntary if the accused's will was "overborne" or his "capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973); *see United States v. Byers*, 649 F.3d 197, 215 (4th Cir. 2011) ("In considering the voluntariness of a statement under the Due Process Clause, [a court] must determine whether the confession was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence." (internal quotation marks and original brackets omitted)). "In evaluating whether a defendant's will has been overborne," a court should consider "the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep." *United States v. Abu Ali*, 528 F.3d 210, 232 (4th Cir. 2008). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

"In *Miranda v. Arizona*,[5] the [Supreme] Court determined that the Fifth and Fourteenth Amendments' prohibition against compelled self-incrimination required that custodial interrogation be preceded by advice to the putative defendant that he has the right to remain silent and also the right to the presence of an attorney." *Edwards v. Arizona*, 451 U.S. 477, 481–82 (1981). When an "accused indicates that he wishes to remain silent, the interrogation must cease. ***If he requests counsel, the***

---

5   384 U.S. 436 (1966).

***interrogation must cease until an attorney is present.***" *Id.* at 482 (internal quotation marks omitted) (emphasis added). An accused who has invoked his rights to silence and counsel may, however, validly waive those rights. If an accused invokes his right to counsel, a court "may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked." *United States v. Cummings*, 937 F.2d 941, 946 (4th Cir. 1991) (internal quotation marks omitted).

### B. Analysis

The evidence presented at the hearing showed Defendant made four statements to law enforcement in January and February 2018: one on January 31, two on February 1, and one on February 2. The statements were made in connection with multiple alleged robberies that law enforcement from Myrtle Beach, Surfside Beach, and Horry County were investigating, and they occurred after Defendant's arrest while he was in police custody.

#### 1. First Statement (January 31)

Defendant gave his first statement to Lieutenant Tony Allen of the Myrtle Beach Police Department ("MBPD") during an interview on January 31, 2018. The Government submitted an audio recording of this interview, which the Court has reviewed. The interview primarily concerned an alleged robbery of Royal Cleaners on January 29, 2018, and an alleged robbery of Pizza Hut on January 30, 2018.

Based on the totality of the circumstances, the Court finds Defendant's January 31 statement was voluntary. According to the credible testimony of Lieutenant Allen, Defendant gave the statement during the afternoon (3:37 P.M.) in an interview room located inside the MBPD headquarters. Defendant, Lieutenant Allen, and another police officer (Cameron Warren) were present, and the

4

interview lasted approximately fifty minutes. Defendant's handcuffs were removed, and there is no indication that he suffered any physical discomfort during the interview. Defendant is a high school graduate, was not intoxicated, understood English and the officers' questions, and was able to answer the questions. Lieutenant Allen and the other officer did not bring their firearms into the interview room, and they did not use any coercive tactics, violence, improper threats, or promises to elicit Defendant's responses to their questions. At the beginning of the interview, Defendant was fully advised of his *Miranda* rights and signed a form confirming his understanding of those rights. The Court has listened to the interview, and Defendant sounds calm, comfortable, and relaxed. Significantly, at 47:29 on the recording, Defendant states, "I'd like to have a lawyer present," and Lieutenant Allen immediately ceases further questioning and tells Defendant he will not talk to him again unless Defendant asks to speak to him. Given the totality of these circumstances, the Court concludes Defendant's January 31, 2018 statement was knowingly, intelligently, and voluntarily made.

### 2. Second & Third Statements (February 1)

Defendant made two statements to law enforcement on February 1, 2018: (1) a statement to Corporal Wilson James of the Surfside Beach Police Department relating to an alleged robbery of Peggy's Antique Store on January 28, 2018, and (2) a statement to Detective Cory Dulina of the Horry County Police Department relating to an alleged robbery of Domino's Pizza (and alleged robberies of Walmart and Lowe's Home Improvement, which are not at issue in this case). The Government submitted audio and video recordings of both interviews.

As indicated above, Defendant invoked his right to counsel during his January 31 interview with Lieutenant Allen, who then immediately stopped interviewing Defendant. Both Corporal James and Detective Dulina testified they knew Defendant had asked for an attorney (i.e., exercised his right to

5

counsel) before interviewing him.[6] Additionally, both Corporal James and Detective Dulina indicated they—not Defendant—initiated their interviews with Defendant.[7]

"The Fifth Amendment right to counsel applies in a narrow sense only to custodial interrogation, but it broadly relates to interrogation regarding any suspected crime and attaches whether or not the adversarial relationship produced by a pending prosecution has yet arisen." *United States v. Holness*, 706 F.3d 579, 594 (4th Cir. 2013) (internal quotation marks and citation omitted). The Supreme Court has squarely **rejected** the argument that "that the bright-line, prophylactic *Edwards* rule should not apply when the police-initiated interrogation following a suspect's request for counsel occurs in the context of a separate investigation." *Arizona v. Roberson*, 486 U.S. 675, 682 (1988). In doing so, the Supreme Court ruled "the Fifth Amendment right against self-incrimination . . . is protected by the prophylaxis of having an attorney present to counteract the inherent pressures of custodial interrogation, which arise from the fact of such interrogation and exist ***regardless of the number of crimes under investigation or whether those crimes have resulted in formal charges***." *Id.* at 685 (emphasis added).

After the hearing, Defendant filed a supplemental brief arguing his statements to Surfside Beach Police Department and Horry County Police Department should be suppressed because officers had "full knowledge of [his] unequivocal invocation of his right to counsel." *See* ECF No. 72 at p. 3. The Government filed a response agreeing it will not seek to admit these statements during its case-in-chief because they "were subsequent to Defendant's invocation of his right to counsel." ECF No. 75 at p. 1.

---

[6] In fact, Detective Dulina remotely watched in realtime Defendant's interview with Lieutenant Allen. Detective Dulina also wrote in his report that Defendant had asked for an attorney while speaking to MBPD officers.

[7] During Corporal James's testimony at the evidentiary hearing, the Court was aware of Defendant's previous invocation of his right to counsel on January 31 (by virtue of Lieutenant Allen's prior testimony) and therefore questioned Corporal James about who initiated the interview on February 1. Corporal James testified he went to Defendant's cell and asked if he (Defendant) would speak to him (Corporal James). The Court has determined Defendant did not initiate either interview on February 1, 2018.

6

Both Defendant and the Government are correct—the Court must suppress Defendant's second and third statements because they were given after he asked for an attorney, and therefore made in violation of the Fifth Amendment. The fact that Corporal James and Detective Dulina were investigating robberies that occurred in their own jurisdictions is immaterial. *See Roberson*, 486 U.S. at 682–85. Once Defendant invoked his right to counsel, all further interrogation had to cease until Defendant's attorney was present. *See Edwards*, 451 U.S. at 481–82 (1981). There is no indication that Defendant initiated either interview or that he knowingly and intelligently waived the right to counsel he had invoked. *See Cummings*, 937 F.2d at 946. The Court must suppress Defendant's second and third statements given on February 1, 2018.

### 3. Fourth Statement (February 2)

The *Miranda* rule does not apply to voluntary and spontaneous statements, even those given while a suspect is in police custody, that are not the product of interrogation. 384 U.S. at 478 ("Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."); *United States v. Wright*, 991 F.2d 1182, 1186–87 (4th Cir. 1993); *United States v. Rhodes*, 779 F.2d 1019, 1032 (4th Cir. 1985).

Defendant made his fourth statement on February 2, 2018, while Detective Dulina was serving an arrest warrant on him in jail. Defendant's spontaneous statement asking for a plea to five or six years and seeking Detective Dulina's assistance to procure such a plea was unsolicited and not given in response to any questioning by Detective Dulina, according to Detective Dulina's credible testimony. In fact, after Defendant made the statement, Detective Dulina told Defendant he should speak to his attorney. The Court finds Detective Dulina was credible in this regard. *See, e.g.*, *United States v. Wright*, 991 F.2d 1182, 1186–87 (4th Cir. 1993) (holding a defendant's statement—"that he owned the

7

Mossberg rifle"—was admissible because it was voluntary, "unsolicited[,] and not made in response to any interrogation"). The Court finds Defendant's February 2, 2018 statement was knowingly, intelligently, and voluntarily made.

## II.    Motion to Suppress General Warrant

Defendant moves to suppress all evidence seized from a Honda Civic that was searched pursuant to a warrant. *See* ECF No. 56. Defendant presents two arguments in this motion: (1) the search warrant was general and not sufficiently particular, and (2) the search warrant was not supported by probable cause. *Id.*

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment requires that warrants: (1) be issued by a neutral, detached magistrate, (2) contain a particularized description of the place to be searched and persons or things to be seized, and (3) be based on probable cause, supported by oath or affirmation. *United States v. Clyburn*, 24 F.3d 613, 617 (4th Cir. 1994).

### A.    Particularity Argument

Defendant argues the search warrant "was an unconstitutional 'general warrant'" because it "allows for the unrestricted gathering of any item in the automobile" and authorizes a "general, unbridled search of the automobile." ECF No. 56 at pp. 1, 3–4.

"The last clause of the Fourth Amendment contains a 'particularity requirement,' which is fulfilled when the warrant identifies the items to be seized by their relation to designated crimes and when the description of the items leaves nothing to the discretion of the officer executing the warrant." *United States v. Dargan*, 738 F.3d 643, 647 (4th Cir. 2013) (some internal quotation marks omitted).

8

The requirement for particularity "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The degree of specificity required when describing the goods to be seized may necessarily vary according to the circumstances and type of items involved. There is a practical margin of flexibility permitted by the constitutional requirement for particularity in the description of items to be seized." *United States v. Torch*, 609 F.2d 1088, 1090 (4th Cir. 1979) (ellipsis and parentheses omitted). "[A] search warrant is not a constitutional strait jacket," and courts must "employ a commonsense and realistic approach in interpreting warrants, and avoid hypertechnical scrutiny lest police officers be encouraged to forgo the warrant application process altogether." *United States v. Kimble*, 855 F.3d 604, 610 (4th Cir. 2017) (internal quotation marks and ellipsis omitted).

Here, the Court finds the warrant described with sufficiently particularity the place to be searched and the things to be seized. The area to be searched was relatively small—a Honda automobile (not an entire house)—and the things to be seized were those items related to "armed robberies or assaults." While the warrant contains a boilerplate list of items to be seized, it also specifies a "black hoodie with a possible bullet hole, Smith and Wesson 9mm handgun black and silver in color (unknown serial number), financial documents or personal information belonging to the following victims (June Thomas Marley, Hazel Burton and Mark Greulach), a black in color wallet, dark in color bandana/do-rag, gray sweatshirt, cash money, tennis shoes with reflective surface, a Verizon flip cell phone, women's purse and a dark semi-automatic handgun." In short, the warrant satisfies the particularity requirement. *See, e.g.*, *Torch*, 609 F.2d at 1090 ("The circumstances of the search and the nature of the things to be seized both served to limit the discretion of the officers who conducted the search. The area

9

to be searched was Torch's person and the van he used to make deliveries."); *United States v. Ladd*, 704 F.2d 134, 136 (4th Cir. 1983) ("The items to be seized were limited to those relating to 'the smuggling, packing, distribution and use of controlled substances.' More specificity is not required by the Constitution."). The Court rejects Defendant's particularity argument.

### B. Probable Cause Argument

Defendant asserts the search warrant was not supported by probable cause because "there are no witness accounts set forth in the warrant application. There is no information as to any other robbery, yet the warrant seeks such evidence and seemingly authorizes the search for items unrelated to the Pizza Hut robbery." ECF No. 56 at p. 4. Defendant further argues the good faith exception to the warrant requirement does not apply. *Id.*

> Probable cause is "a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). It "depends on the totality of the circumstances," *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), and exists (in the context of a search) "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The probable cause standard does not "require officials to possess an airtight case before taking action. The pieces of an investigative puzzle will often fail to neatly fit, and officers must be given leeway to draw reasonable conclusions from confusing and contradictory information . . . ." *Taylor v. Farmer*, 13 F.3d 117, 121 (4th Cir. 1993).

*United States v. DeQuasie*, 373 F.3d 509, 518 (4th Cir. 2004).

"When a party challenges both the probable cause determination and the conclusion that the good faith rule applies, a reviewing court will ordinarily address the good faith determination first, unless the case involves the resolution of a novel question of law necessary to provide guidance to

police officers and magistrate judges." *United States v. Williams*, 254 F. App'x 945, 946 (4th Cir. 2007) (citing *United States v. Legg*, 18 F.3d 240, 243 (4th Cir.1994)).

Even assuming *arguendo* that the warrant application failed to establish probable cause, the Court finds the search was valid under the good faith exception to the warrant requirement, as argued by the Government. *See* ECF No. 58 at p. 6.

Under the good faith exception, "evidence obtained from an invalidated search warrant will be suppressed only if 'the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (quoting *United States v. Leon*, 468 U.S. 897, 926 (1984)). Ordinarily "a warrant issued by a magistrate . . . suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (internal quotation marks omitted). The Court's analysis is "confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal" in light of "all of the circumstances." *Leon*, 468 U.S. at 922 n.23. There are, however, four circumstances in which the good faith exception will not apply:

> (1) when the affiant based his application on knowing or reckless falsity; (2) when the judicial officer wholly abandoned his role as a neutral and detached decision maker and served merely as a "rubber stamp" for the police; (3) when the affidavit supporting the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant was so facially deficient that the executing officers could not reasonably have presumed that the warrant was valid.

*United States v. Wellman*, 663 F.3d 224, 228–29 (4th Cir. 2011); *see Leon*, 468 U.S. at 923.

While the Court finds none of these circumstances exist,[8] Defendant appears to argue the fourth circumstance is present, arguing "this warrant constitutes a barebones warrant that the 'good faith exception' cannot save." ECF No. 56 at p. 4. The Court disagrees.

The signed warrant identifies in great detail the place to be searched (a grey/silver 2014 Honda Civic bearing North Carolina registration YRM 1133 / VIN No. 2HGFB2F5XEH512761, missing the front passenger hubcap, and located at the MBPD Crime Scene bay at 3340 Mustang Street) and the various specific items to be seized (those mentioned above). The warrant references the attached affidavit of Officer Whitney Fee of the MBPD, who indicates that on January 30, 2018, she and other officers responded to an armed robbery at a Pizza Hut, that surveillance video footage (from Myrtle Beach milestone cameras) showed the Honda was involved in the incident, and that a traffic stop of the Honda resulted in suspects being taken into custody. Officer Fee's affidavit further details how officers, seeing in plain view a parking placard for the Polynesian Beach and Golf Resort, went to the Polynesian and verified the room was registered to the driver of the Honda. Finally, the affidavit identifies specific South and North Carolina agencies investigating multiple "armed robberies and assaults." Given these circumstances, the Court concludes the warrant was not so facially deficient that it would be unreasonable for the executing officers to presume its validity, and therefore the evidence is admissible under the good faith exception. *See, e.g.*, *United States v. Qazah*, 810 F.3d 879, 887 (4th Cir. 2015) (considering the fourth circumstance identified in *Leon* and finding the good faith exception still applied).

### C. Inevitable Discovery Doctrine

---

[8] Further, while Officer Fee had only limited experience in the past preparing affidavits and warrants, she was very credible and not reckless or dishonest in preparing her affidavit.

12

Even if the search warrant was somehow defective and the good faith exception were inapplicable, the Court finds the inevitable discovery doctrine would still permit the introduction of the evidence because police would have found it either from the lawful search for items related to the Pizza Hut robbery **_or_** pursuant to an inventory search of the Honda Civic, as the Government argues (and in the event no search warrant had been sought, as explained below).[9]

"The inevitable-discovery doctrine . . . allows the government to use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have 'ultimately or inevitably' discovered the evidence by 'lawful means.'" *United States v. Bullette*, 854 F.3d 261, 265 (4th Cir. 2017) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). "'Lawful means' include an inevitable search falling within an exception to the warrant requirement, such as an inventory search, that would have inevitably uncovered the evidence in question." *Id.*

Initially, the Court notes Defendant's argument is limited to "the search for items *unrelated to the Pizza Hut robbery*." ECF No. 56 at p. 4. In other words, Defendant challenges the search and seizure of items related to the *other* robberies (i.e, the alleged robberies of Peggy's Antique Store, Domino's Pizza, and Royal Cleaners). However, it is clear that the search for items related to the Pizza Hut robbery (which Defendant does not contest) in the relatively small confines of the Honda Civic inevitably would have inevitably produced items relating to the other robberies, and therefore the inevitable discovery doctrine would permit the introduction of such evidence.

---

[9] The Court reserved ruling on Defendant's objection to the Government's reliance on the inevitable discovery doctrine exception (here, an inventory search) to the exclusionary rule. Defendant made this objection because the Government did not argue this particular exception in its response to the motion to suppress. The Court overrules this objection because Defendant had a fair opportunity to cross-examine Lieutenant Allen and Officer Fee at the hearing regarding the inventory search policies of the MBPD.

13

Moreover, the Court finds the evidence would have been found pursuant to an inventory search. "An inventory search of an automobile is lawful (1) where the circumstances reasonably justified seizure or impoundment, and (2) law enforcement conducts the inventory search according to routine and standard procedures designed to secure the vehicle or its contents." *Id.* "The government need not provide a written inventory policy to prove that a law enforcement agency conducts its inventory searches according to routine and standard procedures so long as the district court has sufficient evidence to ensure that the practice conforms to [Fourth Circuit] precedent. *Id.* at 266. "[A]n inventory search of all of a vehicle's contents is reasonable if the agent who conducted the search followed a practice to do so for all impounded vehicles." *Id.* "[T]he bar for proving the existence of the requisite standard policy is not a high one. The policy and criteria need not be in writing; testimony regarding standard practices will do." *United States v. Young*, __ F. App'x __, __, 2018 WL 5308095, at *6 (4th Cir. Oct. 25, 2018) (internal quotation marks omitted).

According to the credible testimony of Officer Fee, police stopped the Honda Civic for failure to stop for a blue light and apprehended Defendant and the driver (codefendant Kennedy Boggs). At this point, the Honda Civic was lawfully in police custody,[10] and had they not sought a search warrant, police would have conducted a routine inventory search pursuant to the common practice of the MBPD. The Government presented evidence—through both Officer Fee's and Lieutenant Allen's credible testimony—that the MBPD has a policy of conducting an inventory search on vehicles that are towed, that the purpose of the policy is to protect both the police department and the property owner, and that "tow sheets" are filled out if all occupants are arrested or if the vehicle owner is not on the scene. Here,

---

[10] "[I]mpoundment of a suspect's vehicle after his arrest on a public highway is constitutionally reasonable." *United States v. George*, 971 F.2d 1113, 1121 (4th Cir. 1992).

14

both occupants (Defendant and Boggs) were arrested, and the owner (Boggs' grandmother) was not present. Thus, the Court finds the Government proved by a preponderance of the evidence that the towing of the Honda Civic would have triggered a standard inventory search regardless of whether probable cause to search existed, and therefore the evidence seized pursuant to the warrant would have been inevitably discovered. *See, e.g.*, *United States v. George*, 971 F.2d 1113, 1121 (4th Cir. 1992) ("Once the truck was lawfully in police custody, there were two ways in which the police lawfully could have found the hacksaw blades. First, they could have executed the search warrant for the truck, which they in fact did. Second, *even in the absence of the search warrant, the police could have conducted a routine inventory search, during which the hacksaw blades might have been discovered*. Thus, even if the search warrant was defective and Leon's good faith exception inapplicable, the inevitable discovery doctrine would permit the introduction of the hacksaw blades into evidence if the police would have found the blades pursuant to an inventory search of the lawfully impounded vehicle." (internal footnote omitted) (emphasis added)). The Court further finds the items related to robberies other than the Pizza Hut robbery that were seized would have been inevitably discovered during the lawful search of the Honda for the robbery of Pizza Hut—for which Defendant does ***not*** question the existence of probable cause.

For the foregoing reasons, the Court **DENIES** Defendant's motion to suppress the evidence seized from the Honda Civic.

### III. Motion to Dismiss Counts 3, 5, 7, and 9

Defendant asserts the § 924(c) violations alleged in Counts Three, Five, Seven, and Nine of the indictment must be dismissed because the predicate Hobbs Act robbery offenses (alleged in Counts Two, Four, Six, and Eight of the indictment) do not qualify as "crimes of violence" within the meaning

15

of 18 U.S.C. § 924(c). *See* ECF No. 48. The Court **DENIES** this motion for the reasons explained in its prior orders denying similar motions. Specifically, the Court has previously held that Hobbs Act robbery constitutes a crime of violence under § 924(c)'s force clause. *See United States v. Vanderhorst*, No. 4:17-cr-00865-RBH-1, 2018 WL 2462873 (D.S.C. May 31, 2018) (order denying motion filed by Attorney Nettles); *United States v. Wheeler*, No. 4:15-cr-00337-RBH-1, at ECF No. 115 (D.S.C. May 16, 2016).

## **Conclusion**

For the foregoing reasons, the Court **SUPPRESSES** Defendant's second and third statements made on February 1, 2018, **DENIES** Defendant's Motion to Suppress General Warrant [ECF No. 56], and **DENIES** Defendant's Motion to Dismiss Counts 3, 5, 7, and 9 [ECF No. 48].

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
November 30, 2018  R. Bryan Harwell
United States District Judge